IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RODNEY DEMETRIUS FLOWERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13CV560 |
| | ) | |
| B.J. MYERS, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

MEMORANDUM OPINION, SUPPLEMENTAL ORDER,
AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Rodney Demetrius Flowers, previously submitted a pro se complaint under

42 U.S.C. § 1983 (Docket Entry 2) and requested permission to proceed *in forma pauperis*

pursuant to 28 U.S.C. § l915(a) (Docket Entry 1).  Plaintiff named B.J. Myers, a High Point,

North Carolina, police officer, Marty Sumner, the High Point Police Chief, and the High

Point Police Department itself as defendants in the Complaint.  (Docket Entry 2, § IV(B).)

The Complaint alleged that Joshua Livingston argued with Plaintiff and then shot him.  (Id.,

§ V.)  Plaintiff claimed that Defendant Myers told him that warrants were being issued for

Livingston, but that Livingston was never arrested, perhaps because he worked as an

informant for the High Point Police Department.  (Id.)  Plaintiff contended that the failure

to arrest Livingston for shooting him violated Plaintiff's constitutional rights.  (Id.)  He also

stated that Defendants failed to protect his rights and his life.  (Id.)

The undersigned reviewed the Complaint pursuant to 28 U.S.C. § 1915A(a) and recommended dismissal for failure to state a claim upon which relief could be granted because there is no constitutional right to have a crime investigated or a third person prosecuted; likewise, there is no constitutional right to protection from a third person. (Docket Entry 3.)   In response, Plaintiff filed two paper writings which were docketed as an Objection (Docket Entry 5) and an Additional Objection (Docket Entry 6) to the Recommendation.   However, Plaintiff does not actually appear to object to the basic conclusion in the Recommendation that the Complaint failed to state a claim.   Instead, Plaintiff repeats portions of his claims and adds allegations and documents which recast his claims, making his filings more of an attempt to amend his Complaint than objections to the prior Recommendation.  However, treated as attempted amendments, Plaintiff's recent filings still do not state any viable claim for relief.[1]

## Basic Legal Framework

As with the original Complaint, because Plaintiff is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity," this Court has an obligation to "review" his new claims.  28 U.S.C. § 1915A(a).  "On review, the court shall . . . dismiss the complaint, or any portion of the complaint, if [it] – (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

---

[1] To any extent that the filings truly represent objections to the prior Recommendation, they can be handled as such by the District Judge presiding over the case.  This Supplemental Recommendation addresses the filings only to the extent that they seek to amend or alter the Complaint.

-2-

Applicable here, a plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915A(b)(1), when the complaint does not "contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[2] The Court may also anticipate affirmative defenses that clearly appear on the face of the complaint. Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 954 (4th Cir. 1995) (en banc). For the reasons that follow, the Complaint, as well as the attempted amendments to the Complaint, should be dismissed pursuant to 28 U.S.C. § 1915A(b) because they fail to state a claim on which relief may be granted.

---

[2]Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 697, respectively)).

## Plaintiff's New Allegations

Plaintiff's current allegations are primarily that Defendants Myers and the High Point Police Department falsely arrested and imprisoned him. He claims that Myers investigated the incident between Plaintiff and Livingston and, rather than concluding that Livingston shot at Plaintiff, wrongfully concluded instead that Plaintiff shot at Livingston. (Docket Entry 5.) Plaintiff attempts to support this claim with a number of documents related to the investigation of the case by local authorities, including police and laboratory reports. (Docket Entry 5, Exs.) Taken as a whole, they show that, on March 11, 2012, at 3:48 p.m, Officer K. N. Yokely of the High Point Police Department was looking for a four-wheeler reported to have been driving carelessly when he saw a black male with a large build, long hair in dreads, and a white t-shirt driving a newer model silver Ford F-150 pick up truck. Riding as a passenger in the truck was another black male with short hair, a white stone single earring, a white shirt, and dark gray aviator-style sunglasses. Twenty minutes later, Yokely heard a call of shots being fired with the suspect last seen in a silver Ford truck. After learning that Plaintiff was the suspected shooter, he pulled up Plaintiff's police file and confirmed that Plaintiff was the person he saw driving the truck minutes earlier.

While checking the area unsuccessfully for the truck, Yokely heard a call dispatched stating that Plaintiff's sister had called and stated that Plaintiff was being transported to the emergency room in a private vehicle after being shot by someone named "Josh." Yokely and another officer went to the local emergency room and arrived before Plaintiff. At 5:01 pm, a newer burgandy sedan pulled into the drop off area of the emergency room with Plaintiff

-4-

in the front passenger seat and Gregory Vuncannon in the rear passenger seat. Yokely identified Vuncannon as the passenger he saw with Plaintiff in the truck just before the shooting. Plaintiff entered the emergency room claiming to have been shot and received treatment. Yokely observed a small burn or laceration with no blood on Plaintiff's lower right side.

Plaintiff stated that, while riding in a burgandy Impala, he saw Josh Livingston on the side of the road. He got out of the car intending to fight Livingston. Plaintiff claimed that Livingston then took off his shirt, ran into the street, and began shooting with a black gun. Plaintiff reported that Livingston fired multiple shots. Plaintiff reportedly fled back to the car with "Greg," who drove away hurriedly. Greg was the only other person in the car. After arriving safely at a local store, Plaintiff checked himself, saw that he had been shot, and then called "'his people'" and the police. His cousin then brought him to the emergency room. A gunshot residue test conducted on Plaintiff in the emergency room did not reveal significant concentrations of metals indicating gunshot residue.

Officers talked to Vuncannon separately in the lobby of the emergency room. He stated that he, Plaintiff, and another person were riding in a burgandy or red Toyota Avalon with the other person driving and that they went an unidentified location to fight. He saw a male reaching for something and heard shots. Both Plaintiff and Vuncannon agreed to come to the police department later for interviews.

At the scene of the shooting, Defendant Myers conducted the investigation. He initially interviewed three witnesses to the shooting who stated that a gray Ford F-150

-5-

approached the scene where Livingston and others were standing. One of the witnesses recognized Plaintiff as the driver of the truck. Plaintiff began to yell at Livingston and challenge him to a fight before the passenger in the truck persuaded him to leave. As the truck reached a nearby intersection, Plaintiff pointed a gun out the window and began to fire. Officers located bullet holes in a nearby vehicle and house and determined that the trajectories were consistent with the bullets having been fired from the intersection as described by the witnesses. They also located four shell casings in or near the intersection. A later canine search of the area turned up no further casings.

Plaintiff later came to the police station for an interview where he repeated his earlier story with more detail. Of importance, he claimed that Livingston fired between eight and sixteen shots and that neither he nor Vuncannon had a gun or fired shots. Myers then confronted Plaintiff by telling him that his story did not make sense and that the number of shell casings and the evidence concerning the trajectory of the bullets contradicted his story. Plaintiff became angry, asked to leave, and then did so. Vuncannon never appeared for a further interview.

Finally, police interviewed Joshua Livingston. According to Livingston, two weeks prior to the shooting, Plaintiff and his girlfriend drove by Livingston and a group of people while pointing weapons at them. Then, the night before the shooting, Livingston confronted Plaintiff at a nightclub, resulting in a fight. The next day Livingston was again standing on the street with a group of people when Plaintiff drove by in a gray Ford F-150 truck. Plaintiff fired a single shot from a pistol and then drove to the nearby intersection, where he

-6-

fired more shots. Livingston believed himself to have been the target of the attack because the shots were fired in his direction and no one else in the area had any prior problems with Plaintiff. Based on all of the evidence and witness interviews, Detective C.W. Wolanin swore out a warrant charging Plaintiff with attempted first-degree murder, resulting in Plaintiff's arrest on that charge and the setting of a $1,000,000 secured bond.

## Discussion

Plaintiff identifies his claim as for false arrest or false imprisonment. Claims of false arrest or imprisonment constitute common law torts, the elements of which are used to define a claim under § 1983 based on the Fourth Amendment to the United States Constitution. Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000). Plaintiff does allege that Defendants[3] violated his Fourth Amendment rights; however, he still does not state any claim for relief based on his arrest. "In Brooks v. City of Winston–Salem, 85 F.3d 178 (4th Cir.1996), [the United States Court of Appeals for the Fourth Circuit] held that a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant. At most, such an official can be pursued through a cause of action for malicious prosecution." Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998). Here, Plaintiff's writings and his supporting documents make it clear that his arrest occurred pursuant to a warrant for attempted first-degree murder. Therefore, his claim must be one

---

[3]Plaintiff named a police department and a supervisor as defendants and named only one individual investigating officer as a defendant in the case. That officer was responsible for only some of the investigation and did not procure the warrant for Plaintiff's arrest. Therefore, it appears that Plaintiff named the wrong defendant. However, because this problem could potentially be fixed by further amendment of the Complaint and because the Complaint suffers from other fatal defects that cannot be fixed, no need exists to address the matter further.

for malicious prosecution, rather than false arrest or imprisonment. A malicious prosecution claim requires that a plaintiff "allege and prove a termination of the criminal proceedings favorable to [the plaintiff]." Brooks, 85 F.3d at 183. Plaintiff does not allege any favorable termination of the charges against him and, in fact, alleges that he remains held on the $1,000,000 bond. Plaintiff thus does not state any claim for malicious prosecution.

Construing Plaintiff's claims in the light most favorable to him, he may also be alleging that the warrant for his arrest was not facially valid or that officers did not use good faith or believe when procuring the warrant that probable cause existed to charge Plaintiff with attempted first degree murder. If so, this attempt to state a claim is foreclosed by Plaintiff's own exhibits.

"Probable cause to justify an arrest arises when 'facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" Porterfield, 156 F. 3d at 569 (quoting Michigan v. DeFillippo, 443 U.S. 31, 37(1979)). Probable cause "'is an objective standard of probability that reasonable and prudent persons apply in everyday life' and that "requires more than 'bare suspicion' but requires less than evidence necessary to convict." Id. (quoting United States v. Gray, 137 F.3d 765, 769 (4th Cir.1998)). Plaintiff's own exhibits show that three witnesses plus the alleged victim, Livingston, all told police that Plaintiff and another man drove past Livingston in a grey Ford F-150 truck and fired shots in Livingston's direction. Shell casings at the scene, the trajectory of all of the bullet holes found, and a

police officer's observation of Plaintiff driving a similar truck with a passenger just minutes before the shooting all supported the witnesses' stories. Plaintiff and Vuncannon denied that Plaintiff shot at Livingston and claimed that Livingston was the only shooter in the incident. However, their stories were inconsistent with the physical evidence and with Plaintiff's presence in the truck just before the shooting. Plaintiff also refused to talk further when officers raised these problems with him and Vuncannon did not appear for any further interview at all after initially speaking to officers in the emergency room.

Looking at the totality of the circumstances described in the information presented by Plaintiff, the officers easily had probable cause to seek an arrest warrant against Plaintiff for attempting to murder Livingston. This conclusion does not imply that Plaintiff will ultimately be convicted. However, information clearly existed to establish far more than a "bare suspicion" for the charge against Plaintiff. He does not state any claim for relief based on false arrest, false imprisonment, or malicious prosecution.

Plaintiff also claims that he is being held on an excessive bond. However, federal court intervention into ongoing state court criminal proceedings offends the principles of state-federal comity and thus only can occur in extreme circumstances. Younger v. Harris, 401 U.S. 37 (1971). Federal courts abstain from prior ongoing state proceedings that implicate important state interests if the plaintiff will have an adequate opportunity to raise any federal claims in the state proceedings. Id. To avoid abstention, a plaintiff must demonstrate that the state courts will not afford an adequate remedy and that irreparable injury will occur without equitable relief. Middlesex Cnty Ethics Comm. v. Garden State Bar

Ass'n, 457 U.S. 423 (1982). Clearly, Plaintiff can challenge his bond in the state courts through his criminal attorney or, if he proceeds pro se, on his own. Other courts in similar situations have refused to intervene as to state court bond and prosecution practices, and this Court should as well. See, e.g, Pompey v. Broward Cnty, 95 F.3d 1543 (11th Cir. 1996) (refusing to intervene in state contempt proceedings); Mounkes v. Conklin, 922 F. Supp. 1501 (D. Kan. 1996) (refusing to intervene in state bond/bail proceedings); Mudd v. Busse, 437 F. Supp. 505 (N.D. Ind. 1977) (same).

Finally, Plaintiff makes two other minor allegations. First, he claims that the High Point Police Department violated his rights by incorrectly identifying him as left handed. Whether or not this occurred, it did not violate any of Plaintiff's federal rights. There is no constitutional right to have one's dominant hand correctly listed. Likewise, Plaintiff asserts that a crime lab report associated with his case lists the type of case as shooting into an occupied dwelling, but that he was later charged with attempted murder. The listing of a case in a preliminary investigative report does not control the ultimate charges filed. Nor could the difference in the listing and the charges violate any federal right. These allegations fail to state any claim for relief.

As a result, Plaintiff's request to proceed *in forma pauperis* should still not be countenanced, with the exception that *in forma pauperis* status shall be granted for the additional purpose of entering this Supplemental Order and Recommendation.

**-10-**

Plaintiff also submitted a Motion (Docket Entry 7) requesting appointment of counsel and summary judgment in his favor. Given his failure to state a claim and the recommendation of dismissal, that Motion should be denied.

IT IS THEREFORE ORDERED that *in forma pauperis* status be granted for the sole purpose of entering this Supplemental Order and Recommendation.

IT IS RECOMMENDED that the documents labeled as an Objection (Docket Entry 5) and Additional Objection (Docket Entry 6) to the prior Recommendation be treated as attempts to amend the Complaint, but that this action still be dismissed pursuant to 28 U.S.C. § 1915A for failing to state a claim upon which relief may be granted.

IT IS FURTHER RECOMMENDED that Plaintiff's Motion (Docket Entry 7) seeking appointment of counsel and summary judgment be denied.

This, the 23rd day of October, 2013.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
